UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CEDRIC WELCH,

        Petitioner,

                                              Case No. 15-cv-12553

v.

                                              HON. MARK A. GOLDSMITH

THOMAS WINN,

        Respondent.

_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE
A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN
FORMA PAUPERIS ON APPEAL**

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Petitioner Cedric Welch was convicted after a jury trial in the Kent County Circuit Court of armed robbery, Mich. Comp. Laws § 750.529; and conspiracy to commit armed robbery, Mich. Comp. Laws § 750.157a. Petitioner was sentenced as a fourth-time habitual felony offender to concurrent terms of 21-to-50 years' imprisonment for his two convictions.

The petition raises five claims: (i) insufficient evidence was presented at trial to sustain Petitioner's convictions, (ii) the trial court erroneously admitted expert witness testimony, (iii) Petitioner's confrontation rights were violated by admission of a non-testifying co-defendant's statement, (iv) the trial court erroneously allowed admission of voice identification evidence, and (v) Petitioner's sentence was based on inaccurately scored sentencing guidelines. For the reasons set forth, the Court denies the petition for a writ of habeas corpus. The Court also declines to issue a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

**I. BACKGROUND**

1

This Court recites verbatim the relevant facts upon which the Michigan Court of Appeals relied, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009).

> In the early morning hours of September 1, 2011, two masked men robbed a McDonald's restaurant on Alpine Road in Grand Rapids at gun point. The robbers entered the dining room through a door mistakenly left unlocked. After ordering the restaurant's three employees to lie on the ground, the masked men forced the store manager to give them the contents of the safe. The robbers absconded with $400 worth of paper gift certificates and $3,233.73 in cash. The victims were only able to describe their assailants as African-American males who wore dark or black clothes. The victims agreed that one of the men carried a revolver. Surveillance footage also revealed that the robbers wore white cloth gloves.
>
> As the robbers fled the scene, surveillance cameras captured their images and showed the men entering an older black Camaro. Two employees of a nearby Wal-Mart saw the men leave the McDonald's. And a man, who had been at the drive-through window during the robbery, testified that he saw a dull black Camaro drive away at a high rate of speed.
>
> Later that morning, a Kent County Sheriff's deputy located a dull black, older Camaro parked in a nearby apartment complex, York Creek. Inside the vehicle, sheriff's deputies found several white gloves. Inside one glove, investigating deputies found DNA evidence, which later testing matched to co-defendant Woods. The deputies also placed a magnetic GPS system under the vehicle's rear bumper, which they later used to track the vehicle in motion. The deputies arrested Woods as a result of an ensuing traffic stop. At the time of his arrest, Woods had several large rolls of currency in various small denominations in his pocket. The deputies seized the currency and Woods' cell phone.
>
> On Woods' cell phone, the investigating deputies found a video of defendant and Woods pretending to swim in money. They also found pictures of defendant and Woods holding a large amount of currency near their faces. The video had been e-mailed at 4:10 a.m. on September 1, to Woods' Google account from an account owned by defendant. The pictures were taken at 5:47 a.m. on September 1.

> Inside Woods' apartment, deputies found 18 booklets of McDonald's paper gift certificates. They also found dark clothing lying on the ground outside of the master bedroom closet. There were spores on the pants matching plant life found along the trail between the Camaro's parking spot and the York Creek apartment of defendant's girlfriend. The deputies matched the still photographs of defendant and Woods holding currency to this location.
>
> The deputies secured a warrant to search an apartment in York Creek belonging to defendant's girlfriend. The video of the men swimming in money was matched to this location. The officers then secured a search warrant for the home where defendant resided with his parents. In defendant's bedroom, the deputies found a plastic case for a revolver-style Daisy air gun. There was an alternate second barrel inside the case, but the revolver was never found. The deputies also never recovered the remainder of the currency. Of note, investigation of defendant's and Woods' cell phone records revealed that they were in the area of the Alpine Road McDonald's and the York Creek apartment near the time of the robbery. And surveillance footage from a local gas station placed defendant and Woods together only two hours after the robbery.
>
> Defendant was not arrested until September 3, 2011. On September 2, 2012, Woods used a recorded jail telephone to contact defendant. The conversation was very cryptic and Woods immediately instructed defendant not to use any names. Woods told defendant to send a text message to Woods' cell phone that would activate a "Prey" software application he had downloaded onto his phone, ostensibly to delete or block access to the phone's contents. This task was never accomplished.
>
> Based on the evidence presented at defendant's retrial, the jury convicted him of armed robbery and conspiracy.

People v. Welch, No. 313085, 2014 WL 1233945, at *1-*2 (Mich. Ct. App. Mar. 25, 2014) (per curiam).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate brief raised the following claims:

i. The evidence that defendant committed an armed robbery is insufficient and defendant has been denied due process; defendant's

      convictions must be vacated.

  ii.    The evidence of conspiracy was insufficient and defendant has been denied due process; his convictions must be reversed; at minimum his conspiracy conviction must be reversed and he must be resentenced.

  iii.    Defendant was denied a fair trial by the admission, through the testimony of a non-expert witness, cell tower evidence that constituted "junk science" and did not qualify for admission under Mich. R. Evid. 702.

  iv.    Defendant was denied his constitutional right of confrontation by the admission of the alleged accomplices' statements to police; counsel was ineffective for failing to object.

  v.    The erroneous admission of unauthenticated voice evidence was plain error that denied defendant a fair trial; in the alternative, counsel was ineffective for failing to object.

  vi.    Defendant was denied his constitutional right to be sentenced on the basis of accurate information where offense variable 12 was misscored.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentence in an unpublished opinion. Welch, 2014 WL 1233945, at *1, *6. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, which raised the same claims as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application, because it was not persuaded that the questions presented should be reviewed by the Court. People v. Welch, 849 N.W.2d 378 (Mich. 2014).

Petitioner returned to the trial court and filed a motion for relief from judgment, raising two claims not presented in this action. The trial court denied the motion for relief from judgment, and Petitioner elected to file this action rather than appeal the state court's decision.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the

correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

A state court's factual determinations are presumed correct on federal habeas review. See

28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. Id.; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III.  ANALYSIS

#### A.  Procedural Default

Respondent asserts that several of Petitioner's claims are procedurally defaulted, because they were not properly preserved in the state courts. Under the procedural-default doctrine, a federal habeas court will not review a question of federal law if a state court's decision rests on a substantive or procedural state-law ground that is independent of the federal question and is adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722, 729 (1991). However, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. See Trest v. Cain, 522 U.S. 87, 89 (1997). Additionally, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003) (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)). It may be more economical for the habeas court to simply review the merits of the petitioner's claims, "for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." Lambrix, 520 U.S. at 525. In the present case, the Court deems it more efficient to proceed directly to the merits, especially because Petitioner's claims are patently meritless.

#### B.  Sufficiency of the Evidence

Petitioner's first claim asserts that insufficient evidence was presented at trial to demonstrate beyond a reasonable doubt his identification as one of the perpetrators of the crimes.

7

He argues that there was sufficient evidence linking Woods to the crimes and linking him to Woods, but there was no evidence linking him to the crime. Petitioner asserts that evidence that he was with Woods on the day of the crime is insufficient to demonstrate that he acted in concert with Woods. Respondent asserts that the state-court adjudication of the claim was reasonable.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In Re Winship, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. at 318-319 (emphasis in original).

More importantly, a federal habeas court may not overturn a state-court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. A federal court may grant habeas relief only if the state-court decision was an objectively unreasonable application of the Jackson standard. See Cavazos v. Smith, 132 S. Ct. 2, 3 (2011) (per curiam). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id. For a federal habeas court reviewing a state court conviction, "the only question under Jackson is whether that finding

8

was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 132 S. Ct. 2060, 2065 (2012).

The Michigan Court of Appeals did not unreasonably apply the Jackson standard when it found that sufficient evidence was presented at trial to prove beyond a reasonable doubt that Petitioner was one of the two men who committed the offenses. Petitioner does not contest the strong evidence presented that Woods committed the robbery and that another man committed the crime with him. The strongest evidence identifying Petitioner as the man who acted with Woods was the video sent from Petitioner's phone to Woods through e-mail three hours after the robbery occurred. The video shows the two men playing with cash and throwing it in the air in celebration. While the prosecutor could not establish when the video was recorded, the fact that it was sent hours after the robbery constituted strong circumstantial evidence that Petitioner was one the two men who committed the robbery. Evidence was also presented that Petitioner was with Woods at a gas station two hours after the robbery. Given the doubly-deferential standard of review, the video evidence alone supports the state court's conclusion that sufficient evidence was presented to demonstrate Petitioner's identity as one of the perpetrators.

Moreover, evidence was presented that after he was arrested, Woods called Petitioner from jail. During the recorded call, Petitioner asks Woods if he told them about his alibi, and Woods asked Petitioner to text him a program to erase the video. Viewed most favorably to the prosecution, the recorded conversation constituted additional strong evidence indicated Petitioner's participation in the crime. Other evidence presented against Petitioner included the fact that Petitioner's girlfriend lived in the apartments near the McDonald's where the robbery occurred, that he was in her apartment immediately before the robbery, that the getaway car was stashed at the apartment complex, and cell phone tower records indicating Petitioner's location

near the scene. Given the record evidence viewed most favorably to the prosecutor, the Michigan Court of Appeals conclusion that sufficient evidence was presented to prove beyond a reasonable doubt Petitioner's identity as the man who acted with Woods was at least reasonable.

Petitioner also asserts that insufficient evidence was presented to support his conspiracy conviction. Under Michigan law, a conspiracy is an express or implied mutual agreement or understanding between two or more persons to commit a criminal act or to accomplish a legal act by unlawful means. People v. Cotton, 478 N.W.2d 681, 688 (Mich. Ct. App. 1991). A conspiracy may be based on inferences or proven by circumstantial evidence. Id. at 688-689.

The evidence presented a trial that the two perpetrators conspired to commit a robbery was overwhelming. The evidence indicated that the robbery was planned; it occurred early in the morning, two men came into the store together, they acted in concert, they left together in a car, the car was then abandoned in a nearby lot, and the two men then got into a different car. This evidence strongly indicates that the robbery was planned beforehand by the perpetrators. The Michigan Court of Appeals conclusion that the sufficient evidence was presented to demonstrate a conspiracy was reasonable.

Accordingly, Petitioner's first claim is without merit.

**C. Admission of Expert Testimony**

Petitioner's second claim asserts that the trial court erroneously admitted the opinion testimony of Sprint employee Marylin Dilly who testified regarding cell phone tower records. Petitioner asserts that Dilly was not qualified as an expert witness before giving her opinion testimony on where various cell phone calls were made. The Michigan Court of Appeals found that it was error under Michigan Rule of Evidence 702 not to qualify Dilly as an expert, but it

found that any error was harmless, because if the prosecutor had moved to qualify Dilly, the trial court would have granted the motion.

Unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional violation. See Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988); Coy v. Renico, 414 F. Supp. 2d 744, 756 (E.D. Mich. 2006). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." Kelly v. Withrow, 25 F.3d 363, 370 (6th Cir. 1994).

Here, Petitioner cannot demonstrate that the admission of the opinion evidence violated his federal constitutional rights or rendered his trial fundamentally unfair. Indeed, a federal district court cannot grant habeas relief on the admission of expert witness's testimony in the absence of Supreme Court precedent showing that admission of that expert witness's testimony on a particular subject violates the federal constitution. See Wilson v. Parker, 515 F.3d 682, 705-706 (6th Cir. 2008). Petitioner has made no such showing. Similarly, a determination as to whether an individual is qualified to give expert testimony involves only a state-law evidentiary issue. See United States ex. rel. Ruddock v. Briley, 216 F. Supp. 2d 737, 743 (N.D. Ill. 2002); see also Vasquez-Torrez v. Dorsey, 66 F.3d 339, at *1 (10th Cir. 1995) (table).

Accordingly, Petitioner's second claim does not present grounds for granting habeas corpus relief.

### D. Admission of Co-Defendant's Statement

Petitioner's third claim asserts that his Sixth Amendment right to confrontation was violated by admission of Woods's out-of-court statements to a police officer. The officer testified

that Woods told him that he has just purchased the vehicle he was driving two hours previously and that the two rolled bundles of cash found on him were acquired because he had just cashed a check. The prosecutor presented evidence that these statements were false and then argued that they demonstrated Woods's consciousness of guilt.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." Pointer v. Texas, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots." which the "Court has been zealous to protect . . . from erosion." Id. at 404-405. The right to a trial by jury is predicated upon the belief "that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel." Id. at 405.

In Crawford v. Washington, 541 U.S. 36, 68 (2004), the Supreme Court held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity for cross-examination regardless of whether the trial court finds the statements to be reliable. However, "[t]he Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id. at 59 n. 9 (2004) (citing Tennessee v. Street, 471 U.S. 409, 414 (1985)). Thus, "admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. Instead, the statement must be used as hearsay — in other words, it must be offered for the truth of the matter asserted." United States v. Pugh, 405 F.3d

390, 399 (6th Cir.2005); accord United States v. Cromer, 389 F.3d 662, 676 (6th Cir. 2004) ("Because the statements were not offered to prove the truth of the matter asserted, the Confrontation Clause does not apply.").

Here, the Michigan Court of Appeals held that the testimony regarding Woods's statement about the car and cash he was carrying was not offered to prove the truth of the matter asserted. Instead, it was offered "to show that Woods made false statements about his activities to establish Woods' guilty conscience." Welch, 2014 WL 1233945, at *5. The Court has no basis for questioning the Michigan Court of Appeals decision that the testimony at issue was not offered for a hearsay purpose.

Therefore, Petitioner has not established a Confrontation Clause violation.

### E. Admission of Voice Identification Evidence

Petitioner's fourth claim asserts that the trial court erred in admitting the testimony of a police officer who said he recognized Petitioner's voice as the person speaking with Woods when Woods made a phone call from jail. Petitioner asserts that the voice identification testimony was not properly authenticated, as required by state law.

As previously mentioned, habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in Estelle v. McGuire, 502 U.S. 62, 67-68 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." Petitioner's claim that the audiotape was improperly admitted during his trial is not cognizable on habeas review, because it is clearly a state-law claim, rather than a constitutional one. Id.

Consequently, this claim also fails.

13

### F. Sentencing Guidelines

Finally, Petitioner's fifth claim asserts that the trial court incorrectly scored the sentencing guidelines. Specifically, Petitioner asserts that the Offense Variable relating to the number of victims was improperly scored to reflect three or more victims for the three employees of the McDonald's who were forced to lie on the floor at gunpoint.

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. See Hutto v. Davis, 454 U.S. 370, 373-374 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); Austin v. Jackson, 213 F.3d 298, 301-302 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); Cook v. Stegall, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law).

Therefore, Petitioner's claim that the sentencing guidelines were scored incorrectly in his case does not form the basis for granting habeas corpus relief.

### G. Certificate of Appealability and Leave to Proceed In Forma Pauperis On Appeal

Before Petitioner may appeal this Court's dispositive decision, a certificate of must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to

further." Miller-El, 537 U.S. at 327. In applying that standard, a district court may not full merits review, but must limit its examination to a threshold inquiry into the underlying merit the petitioner's claims. Id. at 336-337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right, and concludes that reasonable jurists would not debate the Court's conclusion that the petition should be denied. Accordingly, a certificate of appealability is not warranted in this case.

The Court also denies Petitioner leave to appeal in forma pauperis, because any appeal would be frivolous. See, e.g., Dell v. Straub, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002); Fed. R. App. P. 24(a).

### IV.  CONCLUSION

For the reasons stated above, the Court denies the petition for a writ of habeas corpus with prejudice, declines to issue a certificate of appealability, and denies leave to proceed in forma pauperis on appeal.

SO ORDERED.

Dated:  August 10, 2016                                           s/Mark A. Goldsmith
           Detroit, Michigan                                              MARK A. GOLDSMITH
                                                                                    United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 10, 2016.

s/Karri Sandusky
Case Manager
